IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHERMAN ELLIS.,**<br><br>Plaintiff,<br><br>v.<br><br>**BUDGET MAINTENANCE, INC.,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 13-2096** |

MEMORANDUM OF LAW
RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                    **June 12, 2014**

## I.    Introduction

Sherman Ellis, a black male, has brought this § 1981 retaliation action against his former employer, Budget Maintenance, Inc. Budget provides custodial services to various commercial clients. Ellis claims that Budget fired him in retaliation for complaining about four swastikas that were graffitied on the wall of a janitor's closet in one of the client locations that Budget services. Ellis has not brought a claim for direct discrimination based on his race.

Budget responded to the suit by answering Ellis's complaint. After conducting discovery, Budget moved for summary judgment. The Court held a hearing on summary judgment on June 5, 2014.

## II.    Undisputed Facts

### A.    Complaints About Poor Performance and Ellis's Termination

Budget was founded by John Allen, who is the current president of the company. Budget operates a commercial cleaning business and employs individuals to clean premises owned or maintained by its clients, including the locations at issue in this case, Urban Outfitters in the

1

Navy Yard in South Philadelphia and SEI in Oaks, Pennsylvania. ECF 25 at 26 ¶ 1. Ellis was hired as a second-shift cleaning and maintenance supervisor and assigned to Urban Outfitters in November 2011. ECF 25 at 27 ¶ 4. As a supervisor, Ellis was charged with making sure all the cleaners were performing their nightly duties, including emptying trash cans, vacuuming and mopping floors, straightening out conference rooms, cleaning the glass on the doors, and cleaning and restocking the restrooms and kitchens. ECF 29 at ¶ 17.

Budget's Work Rule #31 of its Employee Handbook states:

If a customer of Budget Maintenance, Inc. asks that a Company employee be removed from a job site or building, that employee may be terminated, depending upon the circumstances, at the direction of Budget Maintenance, Inc.

ECF 25 at 28 ¶ 12. Ellis acknowledges he was aware of the handbook and that it applies to him. ECF 25 at 237 ¶ 5.

Urban Outfitters made several complaints about Ellis's work and the work of those he supervised. ECF 25 at 31-34. Budget officials, including president John Allen, also observed Ellis's poor performance firsthand. ECF 25 at 31 ¶¶ 24-25. Eventually, Urban Outfitters requested Budget to remove Ellis from the job. ECF 25 at 35 ¶ 47. John Allen decided to transfer Ellis to SEI, another Budget client, in Oaks, Pennsylvania. ECF 25 at 35 ¶ 48. At SEI, Allen directly supervised Ellis. ECF 25 at 36 ¶ 53. Allen told Ellis that his main duty was to use a machine called a "chariot" to clean the floors of the cafeteria and the main lobbies. ECF 25 at 36 ¶¶ 54-55.

SEI made several complaints about the condition of the cafeteria floor and other responsibilities held by Ellis. ECF 25 at 36-39 ¶¶ 57-71. On Wednesday, December 5, 2012, Allen and an SEI manager performed their weekly walk-through inspection of the premises. They discovered that the cafeteria was in "atrocious" condition. ECF 25 at 43 ¶ 92. On that day,

SEI requested that Budget remove Ellis from SEI for unsatisfactory performance. ECF 25 at 43 ¶ 93. Allen called Ellis on Monday, December 10, 2012. He told Ellis that there was a problem at SEI and not to come to work.[1] ECF 25 at 45 ¶ 101. John Allen was the sole decision maker regarding firing Ellis. Allen did not consult with any other Budget staff prior to making his decision to terminate Ellis's employment.[2] ECF 25 at 45 ¶¶ 105-06.

Ellis's last day of work for Budget was on Friday, December 7, 2012. ECF 25 at 43 ¶ 99. Budget continued to pay Ellis through December 28, 2012. ECF 25 at 46 ¶ 107. Ellis did not realize he had been terminated until he stopped getting paid. ECF 25 at 46 ¶ 108. After his termination, Ellis filed for unemployment benefits with the Commonwealth of Pennsylvania. Budget filled out an employer application related to Ellis's unemployment benefits in which Budget indicated that the reasons for Ellis's termination were for "lack of work" and "economic loss." ECF 27-10.

### B. Ellis's Complaint About the Swastikas

On Thursday, December 6, 2012, Ellis found four swastikas drawn on the inner wall of a janitor's closet at one of SEI's buildings. ECF 25 at 46 ¶ 110. Other drawings had been sketched on the same wall, including a penis, sail boats, and the phrase "blowjob for $1." ECF 25 at 46 ¶ 113. Ellis found the swastikas racially offensive. ECF 25 at 46 ¶ 116. He understood the presence of these swastikas to mean that their drawer did not like black people or minorities.

---

[1] Budget contends that Allen decided to terminate Ellis's employment on December 5, 2012 based on the results of the morning inspection and the fact that this was the second Budget client to request Ellis's removal. ECF 25 at 44 ¶ 96. Budget also contends that Allen informed Ellis was fired for poor performance in a phone call on December 10, 2012. ECF 25 at 45 ¶ 102. Ellis disputes this, arguing that Allen never informed Ellis of his termination and points to an e-mail he sent to Allen on January 18, 2013 in which Ellis inquired about whether he still had a position at Budget. ECF 27 at 10 ¶ 96.

[2] Ellis does not directly deny this assertion. Instead, Ellis asserts that it is not believable that his supervisors did not report Ellis's complaint about the graffitied swastikas in the janitor closet at SEI to Allen before Allen decided to terminate him. The only evidence that Ellis cites in the record in support of this contention is that (1) Allen testified that supervisors Jackalous and Finichio would make Allen aware of issues pertaining to Ellis, ECF 27-2 at 17; and (2) Jackalous gives input and recommendations in hiring and firing employees. ECF 27-3 at 5.

ECF 25 at 47 ¶ 120.  After discovering the swastikas, Ellis approached the night janitor and asked him if he knew anything about these drawings.  The janitor told Ellis that they were drawn by a former Budget janitor who worked at SEI before Ellis started working there.  ECF 25 at 48 ¶ 122.

Ellis testified at his deposition that he told his supervisor, Frank Jackalous, about the swastikas on December 7, 2012.[3]  ECF 25 at 49 ¶ 132.  He did not tell anyone else about the swastikas until he e-mailed Allen on January 18, 2013, asking if "Frank or anybody had a problem with the question [Ellis] was asking about the racist marks and pictures that was [sic] in the janitorial closet?" ECF 25 at 49 ¶ 135.[4]

### III. Legal Standard

#### A. Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating that no genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could

---

[3] Jackolaus, in his deposition, denied that Ellis ever complained to him about the swastikas or any other racially offensive happening on the job. DE 28 at 2 ¶ 148.

[4] Allen stated in his deposition that this was the first time Allen had heard of any complaints about racist marks.  ECF 25 at 49 ¶ 135.  Ellis contends that it is not credible that Allen's staff did not report this complaint to Allen.  *See supra* note 2.

4

conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The plaintiff cannot rely merely on the unsupported allegations of the complaint; he must present more than the "mere existence of a scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

**B.    Section 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). In its current form, "§ 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations." *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 302 (1994).

A right to relief under § 1981 can be shown in three ways: (1) purposeful racial discrimination; (2) a hostile work environment based on racial harassment; or (3) retaliation. A plaintiff can establish a prima facie case of purposeful racial discrimination by showing "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (internal quotation marks omitted).

A plaintiff can maintain a claim for hostile work environment by showing that "(1) he suffered intentional discrimination because of his race; (2) the discrimination was regular and pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in his position who is in the same protected class; and (5) there is a basis for employer liability." *Boyer v. Johnson Matthey, Inc.*, Case No. 02-cv-8382, 2005 WL 35893 (E.D. Pa. Jan. 6, 2005) (citing *Cardenas v. Massey*, 268 F.3d 251, 260 (3d Cir. 2001)).[5]

Section 1981 also encompasses "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452 (2008). To maintain a claim for retaliation, the plaintiff must make out a prima facie case by showing that "(1) he engaged in protected activity, (2) his employer took an adverse action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010). The Third Circuit has also held that, in "a retaliation case a

---

[5] Although *Cardenas* is a Title VII case, the analysis of whether a hostile work environment exists under Title VII and § 1981. *Weston v. Pa. Dep't of Corr.*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) abrogated in part on other grounds by *Burlington N. & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006).

plaintiff must demonstrate that there had been an underlying section 1981 violation." *Id.* (citing *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1958 (2008)).

Here, Ellis claims that Budget fired him for complaining about the swastikas graffitied on the janitor closet wall.

Because Ellis has no direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. If Ellis can establish a prima facie case of retaliation, then the burden shifts to Budget to advance a legitimate, non-retaliatory reason for its adverse employment action. If Budget advances such a reason, the burden shifts back to Ellis to present evidence from which a reasonable jury could find that the non-retaliatory explanation is merely a pretext for discrimination or should otherwise be disbelieved. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

**IV.    Discussion**

Budget's primary argument for granting summary judgment is that Ellis has failed to identify any facts in the record that demonstrate an underlying § 1981 violation to which his retaliation claim relates. Budget cites to the Third Circuit's *Oliva* decision in support of this requirement. If Budget's view of the relevant legal standard is correct, the Court must grant Budget summary judgment because Ellis has failed to present any evidence regarding an underlying § 1981 violation. At oral argument, Ellis conceded that he has not offered any evidence on this point. However, he has not offered such evidence because he rejects that *Oliva* is applicable to this case. Ellis argues instead that the Third Circuit evaluates § 1981 retaliation claims with the same standard it uses for Title VII retaliation cases. Ellis cites Third Circuit precedent recognizing that in a Title VII retaliation case "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that he was acting under a good faith,

7

reasonable belief that a violation existed." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 2006). Accordingly, Ellis contends that to maintain his retaliation claim he only has to show that he was acting under a good faith, reasonable belief that a violation existed when he reported the swastikas.

Ellis is correct that the Third Circuit treats § 1981 and Title VII claims similarly. *See Oliva*, 604 F.3d at 798 n.14 (noting that the Title VII standard applies for § 1981 retaliation cases). Nevertheless, *Oliva* also specifically holds that in "a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Id.* at 798 (citing *CBOCS West, Inc. v. Humphries*, 128 S. Ct. at 1958). Given that *Oliva* recognized an additional element beyond what a Title VII case requires and then goes on to state that the Third Circuit applies Title VII retaliation jurisprudence to § 1981 retaliation claims, the Court must carefully scrutinize *Oliva* to determine how it controls the adjudication of the claim in this case.

In *Oliva*, a police officer claimed that he was retaliated against for complaining to his superiors that he was being instructed to racially profile when making traffic stops. After stating that a plaintiff is required to demonstrate an underlying § 1981 violation to maintain a retaliation claim, the *Oliva* court concluded that the record would permit a reasonable jury to find that the conduct about which the plaintiff complained—police officers demonstrating to the plaintiff how to stop, search, and arrest motorists without probable cause by reason of their race—would violate the § 1981 rights of the people subjected to these illegal traffic stops. *Id.* It then went on to recite and apply the familiar prima facie elements for § 1981 and Title VII retaliation claims.

*Oliva*'s requirement to demonstrate an underlying violation was not mere dicta. *See Central Green Co. v. United States*, 531 U.S. 425, 431 (2001) (observing that rulings essential to the disposition of a case are binding, but dicta are not). In defining the legal standard for § 1981

8

retaliation claims, *Oliva* clearly holds that the plaintiff must show an underlying § 1981 violation to maintain a retaliation claim. Even if this Court were to go beyond the plain language of the announced standard and look to what the *Oliva* court did rather than what the court said, *see United States v. Kemp*, 421 F. Supp, 563, 568 (W.D. Pa. 1976) ("We believe that it is more important to examine what the court did . . . than it is to analyze what the court said."), there is no equivocation about what the Third Circuit stated was required for a retaliation claim—the *Oliva* court did what it said it was required to do. According to the court's analysis, identifying whether there was evidence in the record of an underlying § 1981 violation was a threshold issue that was decided first, before the court moved on to evaluate any other aspect of the officer's claim. *See Oliva*, 604 F.3d at 798.

Once that threshold requirement was met, the panel went on to hold that no reasonable factfinder could find a causal connection between the officer's protected activity and the purported adverse employment action he suffered. *Id.* at 799. *Oliva*'s ultimate rejection of the officer's retaliation claim does not mean that its holding regarding an underlying § 1981 violation can be disregarded or considered unessential to the holding of that case. Because the existence of an underlying violation was treated as a threshold issue, the *Oliva* court would never have reached its causation holding had the officer failed to satisfy this initial hurdle. It therefore remains an essential part of the panel's ultimate holding and thus is binding on this Court.

Other courts in this district have acknowledged the Third Circuit's instruction regarding an underlying violation. *See, e.g.*, *Shine v. TD Bank Fin. Grp.*, Case No 09-cv-4377, 2010 WL 2771773, at *3 (D.N.J. July 12, 2010) ("A party asserting a retaliation claim under § 1981 must show an underlying violation of the statute as well as satisfying the elements of a retaliation claim."); *Johnson v. Labor Force, Inc.*, Case No. 10-cv-199, 2011 WL 6303192, at * 2 (E.D. Pa.

9

Dec. 15, 2011) (Wells, C. Mag. J.) ("Further, in a retaliation case, the plaintiff must demonstrate that there has been an underlying § 1981 violation."); *cf. Wise v. Estes*, Case No. 10-cv-481, 2010 WL 2757273, at *6 (D.N.J. July 6, 2010) (concluding, consistent with *Oliva*'s requirement but without citation to it, that plaintiffs failed to state a retaliation claim because they failed to sufficiently plead discrimination and harassment claims under § 1981).

Ellis offered no arguments in his briefing to distinguish *Oliva*. At oral argument, however, Ellis argued that *Oliva*'s underlying-violation requirement should be construed narrowly. Ellis contends that the *Oliva* court derived the underlying-violation requirement from the following language in the Supreme Court's *CBOCS* decision: "The Supreme Court, however, has held that section 1981 also encompasses 'the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual.'" *Oliva*, 604 F.3d at 798 (quoting *CBOCS*, 128 S. Ct. at 1958). Based on this language, Ellis argues that when a person who has tried to help a different individual suffering direct discrimination experiences retaliation then, and only then, does the plaintiff need to demonstrate an underlying violation of § 1981. Ellis offers no cases that support this interpretation of *Oliva*.[6]

Nevertheless, Ellis suggests that the *Oliva* decision contemplates two kinds of § 1981 retaliation claims: (1) where the complainant experiences retaliation after trying to help someone else suffering direct discrimination and (2) where the complainant experiences retaliation after complaining about direct discrimination directed against himself. Ellis contends that when the

---

[6] Although Ellis did not discuss *CBOCS* in making his argument, that case was cited as the authority for the underlying-violation requirement in *Oliva*. *CBOCS* also does not stand for the proposition advanced by Ellis. There, the Supreme Court recognized that § 1981 implicitly encompassed retaliation claims. The opinion makes no distinction among types of retaliation claims. However, in dispensing with an argument that suggested limiting § 1981 to encompass only status-based discrimination, the majority opinion does discuss, and reject, a distinction between "discrimination that harms individuals because of who they are, *i.e.*, their status, for example, as women or as black persons, and discrimination that harms individuals based on what they do, *i.e.*, their conduct, for example, whistle-blowing that leads to retaliation." *CBOCS*, 553 U.S. at 455-56. No other distinctions arise in that case. Ellis's proferred distinction therefore finds no support in *CBOCS*.

retaliation claim arises under this second category, the plaintiff need not show an underlying § 1981 violation. Ellis offers no cases in support of this point. In addition, Ellis's reading mischaracterizes *Oliva*. The distinction *Oliva* makes is not between two kinds of retaliation; rather, the opinion discusses the difference between a typical § 1981 violation—one which involves direct discrimination—and the less typical § 1981 retaliation claim—one which involves an adverse employment action as a result of making a complaint about a § 1981 violation. *Id.* Absolutely no distinction is made in the opinion—explicit or otherwise—along the lines that Ellis suggests.

Even assuming this difference exists, it does not aid Ellis's cause. Ellis has not claimed that he experienced retaliation after complaining about discrimination directed against himself. As plaintiff's counsel made clear at oral argument, Ellis has not alleged that he was the subject of racially-discriminatory treatment. The Court therefore does not see how Ellis would benefit from his proferred distinction.

The only support that Ellis has marshalled for his position is the Third Circuit Model Civil Jury Instruction 6.1.6 for § 1981 retaliation.[7] That instruction provides that the plaintiff "need not prove the merits of [the activity protected under § 1981], but only that [he] was acting under a good faith belief that []plaintiff's[] or someone else's[] right to be free from racial discrimination was violated." Model Instruction 6.1.6 (updated July 2012). Ellis's citation to this instruction is a double-edged sword. On one hand, Ellis is right to point out that the model instruction does not mention an underlying-violation requirement, which supports his contention that *Oliva* does not apply to this case. On the other hand, the model instruction does not make the distinction that Ellis offered to distinguish *Oliva*—which is to say, the model instruction does not distinguish between a retaliation claim based on plaintiff's right to be free from racial

---

[7] The Third Circuit Model Civil Jury Instructions can be found online at http://www.ca3.uscourts.gov/.

discrimination and a retaliation claim based on someone else's right to be free from racial discrimination. Finally, the model instruction neither cites nor recognizes the decision in *Oliva*. Given the conflicting inferences that could be drawn from the instruction, and the absence of any discussion of *Oliva* in the instruction's notes and commentary, the Court finds Model Instruction 6.1.6 flimsy support for Ellis's legal argument. Moreover, "the Model Instructions are not binding on this, or any, court." *United States v. Maury*, 695 F.3d 227, 259 (3d Cir. 2012).

      The Court acknowledges that it has not been able to identify any other circuit court that requires a plaintiff to demonstrate an underlying § 1981 violation to maintain a claim for retaliation, *see, e.g.*, *Pina v. Children's Place*, 740 F.3d 785, 800-01 (1st Cir. 2014) ("To establish a prima facie case of retaliation under either § 1981 . . . a plaintiff must establish that: 1) she engaged in a statutorily protected activity, 2) she suffered an adverse employment action, and 3) the protected conduct and adverse employment action are causally connected."); *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (same); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir.2004) (same); *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (same); *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030- 31 (8th Cir. 2013); *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1107-08 (9th Cir. 2008) (same); *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1183 (10th Cir. 2002) (same); *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 579 (D.C. Cir. 2013); *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001) (enumerating the common three elements for a retaliation claim and adding an additional element that "defendants were aware of plaintiffs' participation in the protected activity"); *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010) (same).

That the Third Circuit is alone in its judgment to require evidence of an underlying violation is of no moment, for the decisions of other circuit courts are not binding on this Court. Precedential decisions of the Third Circuit, however, are binding.  The Third Circuit has not issued a precedential opinion discussing § 1981 retaliation since the *Oliva* decision. Notwithstanding, the Third Circuit has subsequently issued several nonprecedential opinions addressing § 1981 retaliation claims.  Each of these cases cite *Oliva* for the elements of a § 1981 retaliation claim but do not discuss *Oliva*'s underlying-violation requirement.  *E.g.*, *Walker v. Centocor Ortho Biotech, Inc.*, — Fed. App'x —, Case No. 13-1855, 2014 WL 631042, at*4 (3d Cir. Feb. 19, 2014); *Allen v. Nutrisystem, Inc.*, 546 Fed. App'x. 98, 101 n.1 (3d Cir. 2013); *Doe v. Sizewise Rentals, LLC*, 530 Fed. App'x 171, 175 (3d Cir. 2013).  The jurisprudential tension that these decisions create in light of *Oliva* is considerable.  Nevertheless, for a court to rule consistent with these nonprecedential decisions and ignore *Oliva*'s underlying-violation requirement would usurp Third Circuit authority and be in derogation of this Court's obligations. It would also be unfair to defendants who are entitled to have this Court grant summary judgment where a precedential Third Circuit holding indicates that summary judgment is warranted.  *Oliva* is the controlling authority in this circuit.  The Court is charged to apply that law.

Ellis was required to demonstrate that there had been an underlying § 1981 violation. Because Ellis has not presented any evidence in the record of an underlying violation, Budget is entitled to summary judgment.

An appropriate order follows.

O:\CIVIL 13\13-2096 ellis v. budget\13cv2096 SJ Memorandum.docx